PATIN
*vs.*
HER CREDITORS.

PATIN *vs.* HER CREDITORS.

APPEAL FROM THE COURT OF THE FOURTH-JUDICIAL DISTRICT, THE JUDGE
OF THE SECOND PRESIDING.

The legal or tacit mortgage of the wife for the restoration of her paraphernal effects, attaches to the community property from the time they came into the possession of the husband. Her judgment of separation, although obtained subsequent to a mortgage given on the property by her husband, will hold it to the exclusion of the husband's mortgage creditor.

The rules of practice relating to the filing of answers to appeals in the country cases in the Eastern District, tried in New-Orleans, will be relaxed when justice requires it. They are called for trial as they stand on the docket, and if the answer is in when the case is called up, it will be heard.

Mortgages executed in New-Orleans, and not recorded in the parish .where the mortgagor resides, until after he makes a surrender of his property to his creditors, cannot affect creditors and third persons, who are such at the time of the surrender.

Interest stipulated in contracts, ought to be allowed in putting these claims on the tableau of distribution of an estate; because they make a part of the debt due to the claimant.

The retention by a syndic, of any part of the property surrendered without selling enough to pay the debts of the insolvent, is improper, which should charge him with its value, and for which he is accountable to the creditors.

This is a case of insolvency. On the 13th of May, 1830, the plaintiff presented her petition and schedule, and prayed for a respite. A meeting of creditors was held on the 12th of July following, who after deliberating on her affairs, refused the respite and proceeded with the case as a forced surrender, and appointed B. Poydras de la Lande syndic. Among the articles of property included in the schedule of the insolvent, was a negress named Ismene and her two children, Lastie

and Josephine, estimated at one thousand dollars, and a gold watch at seventy-five dollars. In making sale of the property surrendered, the syndic retained these items, after selling the other property surrendered, claiming them as his own. In May, 1832, he filed a tableau of distribution, and in May, 1835, an amended one from which it appeared there was not sufficient funds to pay the debts due by the insolvent. He moreover placed himself on the tableau as a privileged creditor, for two thousand eight hundred and seventy dollars, with interest, being the amount of a judgment obtained by him against the insolvent, which he had duly recorded in the parish where she resided, on the 29th of May, 1828.

Dubertrand, one of the creditors, opposed the tableau of distribution, and prayed to be placed thereon as a privileged creditor for two notes amounting to one thousand and eighty dollars, secured by two mortgages on several of the slaves surrendered, and among others, the slaves Ismene and Lastie, executed in May and November, 1828, before a notary in New-Orleans, but not recorded in the parish of Point Coupée, the residence of the mortgagor, until the 16th of June, 1830, after her surrender. He was placed on the tableau as a chirographery creditor for the amount of these two claims. He also makes opposition to many other items in the tableau, and claims to be allowed several other claims for costs as privileged ones, together with all interest due or accruing on contracts stipulating for interest. He prays that the syndic be made liable for the amount of the property withheld by him, and that the tableaus be amended, so as to give him a privileged claim.

Messrs. Toledano & Gaillard also opposed the tableaus, on the ground that certain property surrendered was not sold and accounted for by the syndic, specifying the slaves claimed by him; and likewise contesting the validity of his claims as a creditor, at the same time asserting themselves as privileged judgment creditors of the insolvent.

Poydras de la Lande, claimed the slaves in question in virtue of a mortgage made to him by Pierre Abadie the husband of the insolvent, in June, 1822, to secure the

9

payment of the sum of one thousand nine hundred and seventeen dollars, and on which he obtained judgment, in May, 1829. Execution issued on this judgment, in January, 1831, after the surrender, and the plaintiff pointed out the slaves, Ismene and her children, then in his possession as syndic, as being subject to his execution, had them sold and bought in on his account by an agent. This is the title under which he claims them.

Madame Patin obtained a judgment of separation of property from her husband, Pierre Abadie, in July, 1823, for fifteen thousand one hundred and sixty-eight dollars. It appeared in evidence that she brought ten thousand one hundred and sixty-eight dollars of this amount into marriage in 1810. In executing her judgment, the slaves, Ismene and her two children, were sold and bought in by her, in October, 1823. She continued in possession of them until she surrendered them to her creditors, in May, 1830.

The district judge decided that the claim of the syndic to the slaves in question be rejected; the claim was set up under his mortgage, executed by Abadie, the husband, before the judgment of separation by his wife; and although there may be some equity in it, the court cannot allow it in this case. The claim was not preferred by the syndic at the meeting of creditors, nor was it carried on the tableau or in any manner mentioned or referred to in the pleadings. The syndic must therefore be charged with the value of Ismene and her children and the gold watch which he has failed to account for, at their estimated value of one thousand and seventy-five dollars.

The syndic was properly placed on the tableau as a privileged creditor for the amount of his judgment against the insolvent, for two thousand eight hundred and seventy dollars, which had been duly recorded before the insolvency. Dubertrand was properly placed on the tableau as a chirographery creditor only, his mortgages not having been recorded in the parish where the mortgagor resided, until after the insolvency.

Several other amendments were made in the tableaus of distribution. The syndic appealed.

Dubertrand, in answer to the appeal, prayed that the judgment of the District Court be amended in his favor, by allowing his claim as a privileged one, &c. This answer was filed on the 5th of January, 1836, and the cause had already been set for trial on the 7th of the same month. The court, however, took up the cases from the country, including the appeals from the fourth judicial district, in the order they stood on the docket.

*L. Janin,* for the appellant contended, that the prayer for an amendment of the judgment by P. Dubertrand, comes too late. It was filed on the 5th of January, and the case was then already set for trial on the 7th. *Code of Practice, article,* 890.

2. B. Poydras de la Lande ought not to be made responsible to the creditors for the value of the slave Ismene and her child Lastie. In June, 1822, Pierre Abadie, the husband of the insolvent, and owner of these slaves, gave him a special mortgage on them for one thousand nine hundred dollars, with interest. In 1823, Madame Patin obtained a judgment of separation of property against her husband, P. Abadie, in execution of which all his property, including those slaves, was seized and adjudicated to her for seven thousand dollars. The sale mentions no mortgage. If she did not buy subject to the payment of the mortgage of B. Poydras de la Lande, there was no sale and these slaves continued to be the property of her husband. 4 *Martin, N. S.,* 154. 3 *Ibid.,* 604.

3. If she did buy them subject to this payment, then B. Poydras de la Lande had a right to take the proceeds in payment of his claim. In 1827, B. Poydras de la Lande obtained a judgment on the above mentioned mortgage claim of one thousand nine hundred dollars, and on other claims against Pierre Abadie ; an execution issued under it, which was levied on the slaves in question, and they were adjudicated to B. Poydras de la Lande for nine hundred and ten dollars. They still are in his possession. By this state of

things the court is enabled to render the same judgment as if the slaves had been sold by B. Poydras de la Lande, *as syndic,* and the contestation was about the application of the price.

4. The sale of 1823 cannot give any right to these slaves or their proceeds to Madame Patin. If, therefore, she had any rights to them, this must be under her mortgage for property brought into marriage. The creditors ought to have proved that she had such rights. The judgment of separation of property is posterior to B. Poydras de la Lande's mortgage, and affords no evidence of the time when Madame Patin's tacit mortgage commenced. If her claim arose from paraphernal property, she ought to have proved the date of the reception of it by the husband.; if from dotal property, she ought to have produced the marriage contract and proof that it was recorded. 1 *Martin's Digest,* 700 Besides, such a judgment rendered between husband and wife, upon the former's answers to interrogatories, is not sufficient evidence against the creditors of the husband, particularly creditors whose claims are older in date than the judgment. *De Blanc* vs. *Webb,* 5 *Louisiana Reports,* 82.

5. The judgment is also erroneous in so far as it allows to the syndic interest on his own claim only up to the time of the reception of funds from the estate. This reduction of interest was not claimed in the opposition ; had it been, the best answer would have been the tableau of distribution of 1832, from which it appears, that the syndic, instead of applying all the funds then in his hands to his own claim, as in his capacity of mortgage creditor he was entitled to do, he distributed them rateably among all the creditors.

6. Further, if the interest on the syndic's own claims is to cease running, when he receives the funds of the estate, this can be ordered only on the supposition that he can apply those funds to his own payment. But that he is not permitted to do; he must keep them in bank, subject to the order of the court, and they are of no more use to him than to any other creditor. There is, therefore, no reason why his claims should be less favored than those of any other creditor. The

decision of the District Court would be correct only in a case in which it was proved that the funds had been applied in the above described manner.

Cooley, for Dubertrand, the opposing creditor, in answer to the appeal, made the following points :

1. That the court below erred in not placing him on the tableau of distribution, as claimed in his opposition, as a mortgage creditor of the insolvent.

2. The court erred in not allowing interest on the amount due to this respondent, when the same was expressly stipulated to be paid in the acts of mortgage passed by the insolvent in favor of this respondent, and which are in evidence in this cause.

3. The court erred in making the syndic only liable for the price of *Ismene and children*, and also in only charging him with her price at the several periods, and according to the terms at which the other property of the insolvent was sold ; and erred in charging the said syndic with the price of the gold watch in the same manner, when the whole was estimated by the witness at its cash value at the time.

4. The court erred in not making the syndic personally responsible to all the creditors on account of his conduct in stopping the sale of the property ceded, and having never caused the balance to be sold ; and also for not accounting for a large balance due on a judgment in favor of the insolvent, which remained unsatisfied at the cession.

He, therefore, prays that the judgment of the court may be so far amended as to place this respondent on the tableau as a mortgage creditor in the first rank ; that ten per cent. interest on the amount due him by the insolvent may be allowed him from the time stipulated in the acts of mortgage mentioned, up to the filing of the said tableau of distribution ; that the said B. Poydras de la Lande may be decreed to add to the mass the value of the slave *Ismene* and her children and the gold watch, as so much *cash* received by him at the time of the sale of the other property of the insolvent; that said syndic be decreed also to add to the mass, the balance

EASTERN DIST.
January, 1836.
—————
PATIN
vs.
HER CREDITORS.
due on the judgment in favor of the insolvent ; and that he be decreed to be liable to pay all the creditors of the said insolvent, in consequence of his neglects and acts, and that the said judgment otherwise be confirmed.

*Mathews, J.,* delivered the opinion of the court.

In this case, the insolvent having obtained an order for a meeting of her creditors, on a petition in which she requested a respite.  The meeting took place on the 10th of July, and the *procès verbal* of the proceedings was concluded by the officer before whom it was holden, on the 12th of the same month, wherein it appears that the respite was refused ; and this refusal terminated in a forced surrender of the insolvent's property, which was delivered into the possession of the appellant, as syndic of the estate.  He proceeded to have it sold, but stopped the sale before it was all disposed of, supposing that sufficient had been sold to pay the debts, &c., retaining in his possession a female slave, named Ismene, and her children, and a gold watch, and finally claimed this property as his own, under certain pretexts of title, now urged before this court.   He filed two tableaus of distribution of the funds arising from the sale of property which he caused to be made ; these funds proved to be insufficient to pay the debts of the insolvent, and several of the creditors made opposition to the manner of distribution assumed in the tableaus.   From the decision rendered on these oppositions, the syndic appealed; and his claims on the ceded property, and those of the creditor, P. Dubertrand, create the principal difficulty in the decision of the cause.

The appellant claims the slave Ismene, and her children, as his own property, in consequence of having purchased them under execution issued on a judgment which he had obtained against the husband of the insolvent.   The execution did not issue on this judgment, and consequently no sale took place, until long after the appellant had taken into his possession the slave and her children (now in question) as syndic, and held them as part of the insolvent's estate Whether this circumstance ought to be considered as conclu-

sive against his claim, need not be decided, as we are of opinion that her right and title to the property in favor of the mass of the creditors, is supported by the evidence of the case. She obtained a separation of goods from her husband, and in executing the judgment against him, Ismene and her children were sold and bought in by her. This separation, it is true, took place subsequent to the judgment under which the property was finally sold by Poydras as belonging to her husband, but for any thing which appears to the contrary, it was before that time bound by the tacit or legal mortgage of the wife. Her title is, therefore, the best, independent of the possession which accompanied it, down to a period when the appellant ought not be tolerated in opposing the rights of the creditors, his constituents, to the payment of whose debts he was bound to appropriate it, according to their legal rank and privileges.

The answer on the appeal, is made on the part of Dubertrand alone, who prays that the judgment of the court below may be so amended, as to give him the privilege of a creditor with mortgage on the price of the slave Ismene and her children, and also interest on his claim, at the rate of ten per cent. per annum, from the time it became due. This answer is objected to, as having been put in too late. It was, perhaps, not filed in strict conformity with rules prescribed by the Code of Practice, but we are of opinion, that the uniform manner in which those cases, called country cases, has been conducted, authorises some relaxation of the severity of those rules. They are always called up for trial as they stand on the docket, and generally conducted with great liberality and accommodation by the advocates: almost every thing being managed by consent, and we are unwilling to see the justice of any case perverted by unthought of technicalities.

The answer in the present instance must be received, although from the facts of the cause, it can avail the appellee but little. We assume it as true, that Madame Patin when she made the mortgages to Dubertrand, was domiciled in the parish of Point Coupée; and the facts show that they were

EASTERN DIST.
January, 1836.

PATIN
vs.
HER CREDITORS.

The legal or tacit mortgage of the wife for the restoration of her paraphernal effects, attaches to the community property from the time they came into the possession of the husband. Her judgment of separation although obtained subsequent to a mortgage given on the property by the husband, will hold it to the exclusion of the husband's mortgage creditor.

The rules of practice relating to the filing of answers to appeals in the country cases in the Eastern District, tried in N. Orleans, will be relaxed when justice requires it. They are called for trial as they stand on the docket, and if the answer is in when the case is called up, it will be heard.

Mortgages executed in New-Orleans, and not recorded in the parish where the mortgagor resides, until after he makes a surrender of his property to his creditors, cannot affect creditors and third persons,

EASTERN DIST.
January, 1836.

Interest stipulated in contracts, ought to be allowed in putting these claims on the tableau of distribution of an estate, because they make a part of the debt due to the claimant.

The retention by a syndic, of any part of the property surrendered without selling enough to pay the debts of the insolvent, is improper, which should charge him with its value, and for which he is accountable to the creditors.

not recorded in that parish until after the insolvent was compelled to surrender her property. The process verbal of the meeting of creditors which produced this surrender, was finished on the 12th July, 1830, and there is no evidence of the mortgage having been put on record before the 16th of that month. The court below was, therefore, correct in refusing the privilege claimed on these mortgages. Interest being stipulated by the contract, ought to be allowed, and so we presume it is by the amended tableau, being as clearly a part of the debt due by the appellee, as the principal secured by the contracts.

The retention of any part of the property surrendered, without selling enough to pay the debts of the insolvent, was certainly not a proper proceeding on the part of the syndic, but as he is made accountable for the value of the part retained by the amended tableau, and as no opposition seems to have been made by the creditors generally to this decision, it must remain undisturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, to be paid by the appellant.